CASE 50.—ACTION BY OWEN COUNTY AGAINST P. A. ALEXANDER.—January 20, 1910.

## Alexander v. Owen County (four cases)

Appeal from Owen Circuit Court.

J. W. CAMMACK, Circuit Judge.

From the judgments defendant appeals and plaintiff cross appeals.—Affirmed on original and reversed on cross appeal.

1. Taxation — Collection — Compensation· of Sheriff.—Under Const., section 106, requiring the fees of county officers to be regulated by law, the fiscal court could not agree to a compensation to sheriffs for collecting county revenue other than that fixed by statute.

2. Compromise and Settlement—Impeachment or Setting Aside —Mistake.—A settlement based on a mutual mistake of the parties, whether of law or fact, may be opened for correction.

3. Limitation of Actions—Mistake—Settlement by Sheriff— Impeachment—The statute of limitation began to run against the right of a county to surcharge a sheriff's tax collection settlement when a mistake therein was discoverable by the exercise of reasonable diligence.

Alexander v. Owen County (four cases)

4. Limitation of Actions—Public Officers—Laches.—Ordinarily neglect or laches of public officials is not chargeable to the public, as barring a suit by lapse of time, where no intervening right of a third person is to be affected.

5. Taxation—Collection—Compensation of Sheriff.—Since under Ky. St. 1903, sec. 4143, the amount of taxes delinquent when collected or collectible belongs to the county, the fiscal court could not properly agree that, if the sheriff would promptly pay off claims to the county as they were presented, using his own money when necessary, instead of interest, the county would not require him to account for the penalties which he might collect.

6. Taxation—Collection—Settlement by Sheriff—Opening—Effect.—A tax collection settlement made by the sheriff is a single transaction, and, when it becomes final, whether by limitation or judicial pronouncement, it is final as an entirety, but when it is opened for fraud or mistake, it stands as if the settlement had not been closed, and is open for the correction of all errors and frauds, though such latter errors or frauds might have been barred if standing alone.

7. Taxation—Collection—Liability on Sheriff's Bond—Nature of Claim.—Under Ky. St. secs. 4067, 4241, prohibiting the sheriff from collecting taxes before they are duly assessed and certified to him, and making it his duty to report to the county court, for assessments, all omitted lists and persons coming within his knowledge, an action by a county against the sheriff on his bond for sums collected of taxpayers not assessed, or whose names did not appear on the assessor's books, yet who were actually liable to assessment, was not really for taxes collected and accounted for, but in the nature of an action for breach of the sheriff's bond for the performance of his duties.

8. Judgment—Pleading—Conformity to Prayer.—Under Civil Code of Prac. sec. 90, in an action in equity for specific relief under a prayer of general relief on issue joined, the court may grant the parties any relief to which they might appear entitled, and which it is within the jurisdiction of the court to grant; and hence, in an action by the county to surcharge a sheriff's tax settlements, it was proper to charge defendant with taxes collected from taxpayers not on the assessment books, though liable to taxation.

W. D. MOODY, H. W. ALEXANDER, W. A. LEE and H. G. BOTTS for appellant.

CLORE, DICKERSON & CLAYTON for appellee.

OPINION OF THE COURT BY JUDGE O'REAR.

Appellant Alexander was the sheriff of Owen county for the four-year term 1898-1901. As such he was ex officio collector of the state revenue and county levies in that county for those years. The tax lists were certified to him, and he collected and paid over, in the main, that which was specifically certified. But in his settlements he was not charged with certain penalties which he collected, nor was he charged with interest on the balance which in reality he owed the county on a proper settlement at the end of each of the years. He was credited with a straight commission of 7 per cent. on the total amount collected, whereas, the statutory commission was and is 10 per cent. on the first $5,000 collected, and 4 per cent. on the balance. There were a number of errors in the assessor's books, such as failure to extend to the total columns all the property or polls assessed, notwithstanding which the sheriff collected on the true totals, but reported and settled only for the totals shown in the assessors' books. There were a number of instances of alterations of the assessor's books after they had been returned and revised by the county boards of 'supervisors. The effect was that the sheriff seemed to have collected more taxes due the county than he was by the face of the books required to settle for. Throughout the term of this sheriff, indeed throughout the preceding term (when he was a deputy sheriff, and engaged as such in collecting county taxes), there existed a system of the sheriff's collecting taxes from citizens and taxpayers who were not assessed, or at least whose names did not appear on the assessor's books for the particular years, yet who actually were liable to assessment and to

payment of taxes for those years. The sheriff col-
lected them as if they had been assessed, failed to re-
port them as having been omitted, and failed to ac-
count to the county for the sums so collected. Proba-
bly more than 1,000 such collections are shown to
have been made by appellant, and not accounted for
by him in any of his settlements. Such lists were
locally called "sleepers" and so designated through-
out these records.

These several suits were brought against the sher-
iff on his bonds to surcharge his settlements, and to
recover the amounts justly owing the county by him
on a fair settlement. The sheriff interposed a num-
ber of defenses. He pleaded the statutes of limitation
against the suits; more than 5 years having elapsed
from the time of his final settlements in each instance
(save for the year 1901) before the suits were filed.
It was insisted by him that the actions being for the
correction of his settlements upon the ground of
fraud or mistake, the 5-year statute of limitations
(section 2515, Ky. St.; Russell's St. sec. 224) applied,
and as his settlements were matters of record, the
county could have at once discovered the alleged
frauds or mistakes by the least diligence on the part
of the fiscal officers. As to the collection of the taxes
from those not assessed he claims that until they
were assessed he had not the right to collect them,
and that his act in doing so only gave those who paid
the taxes a right of action against him to recover the
sums so paid. Commonwealth v. Alexander, 33 K. L.
R. 971, 112 S. W. 586, 129 Ky. 429. The county levy
laid for 1898 was 90 cents on the $100 worth of tax-
able property; for 1899, the same; for 1900, 90½
cents; and for 1901, 92½ cents. In addition $1.50 poll
tax was levied for each of the years. The county owed

a bonded debt, created prior to the adoption of the present Constitution. In each of the years named there was laid of the total levy 35 cents on each $100 worth of property to create a sinking fund to pay the bonded debt. The Constitution allows only 50 cents on the $100 to be collected for county purposes in a year, except to the extent necessary to discharge indebtedness created prior to the Constitution. Section 157, Const. Thus it appears that for the years 1898 and 1899 there was levied an excess of 5' cents, for the year 1900, 5½ cents, and for the year 1901, 7½ cents, on the $100 in excess of the constitutional limitation. Whaley v. Commonwealth, 110 Ky. 154, 61 S. W. 35, 23 Ky. Law Rep. 1292, Sparks v. Robinson 115 Ky. 453, 74 S. W. 176, 24 Ky. Law Rep. 2336. Appellant pleaded that such excess was void, that the county had not the right to collect it, and that whether he collected it or not, the county had not the right to compel it to be paid into the county treasury, inasmuch as he was liable at the suit of the taxpayers for it. Whaley v. Com., supra; Sparks v. Robinson, supra. The upshot of it was the trial court sustained appellant in each of his pleas except as to the "sleepers." Appellant prosecutes this appeal because he was charged anything on that score, and the county prosecutes cross appeals because it was denied judgment on other items sued on.

Not only were these four cases heard together in the court below, but similar suits against appellant's predecessor, as well as his succesor in office, containing similar grounds of complaints and defenses as here, all were prepared and heard together. In this way this record presents a rather comprehensive view of governmental matters in Owen county for a period of about 10 years, embracing appellant's term

of office.  And it is an astounding picture.  The tax rate has been increased; the assessed value decreased; except for the last year or so of the period; the county indebtedness grew constantly, so did the expense of administering the county government; the Constitution was disregarded as to the limit of taxation; the statute providing for equalizing assessments in the several counties was also purposely disregarded; the statute fixing the compensation of the sheriff was ignored, and the county made to pay several hundred dollars a year excessive commissions; the assessing officers, the fiscal courts, county clerks, and indeed the whole county official machinery seems to have been under the domination of a lawless spell, by reason of which the burdened taxpayers have been mulcted more than $100,000, if we may believe the evidence in this record.  How much more heaven only knows.  For the record shows that it does not show all.

That appellant was fully aware of the conditions, knew he was collecting money to which he was not entitled, and knew he was failing in his duty to the county as an official, we have no doubt.  In addition to a volume of evidence incriminating him in these particulars, including his failure to list his own property and pay taxes on it, his declining to testify in his own behalf in the case, after having had opportunity to do so, and his refusal to bring in his tax stub-books to show, as they doubtless would and ought to have shown, every dollar collected by him as taxes, are enough to convict him of actual knowledge of conditions and the fraudulent purpose to profit by them in spite of the law if he could.

We will first take up the question of the commissions.  The statute then in force fixed the commis-

sion of the sheriff for collecting the county levy at 10 per cent. on the first $5,000, and 4 per cent. on the residue. Sections 1729, 1884, 4148, Ky. St. 1903. Prior to the adoption of the present Constitution there had been in force a special act, applicable to Owen county, fixing the commission of the sheriff at 7 per cent. It seems to have been the opinion, as well as the custom of the fiscal court and other officials concerned, that the local act remained in force after the new Constitution. Such is the testimony of the witnesses who deposed on that point. Section 106 of the Constitution requires that the fees of the county officers shall be regulated by law, and that means, under sections 59, 60, Const., a general law applicable alike to every officer of the class. The special act applying to Owen county was repealed by the general law subsequently enacted regulating the fees of the sheriffs generally, as being utterly repugnant thereto. It is of the class of local tax statutes, special municipal acts, and that host of enabling and partial acts so rife under the former Constitution as to have grown into an abuse, calling into being the convention to frame a new Constitution, the dominant feature of which is uniformity, and equal benefits and burdens in the matter of government. The fiscal court was without lawful power to agree to a different rate than fixed by the statute. It appears that both parties were laboring under the mistaken notion that the old act was still in force. This mutual mistake as to law gave rise to the erroneous proceeding, no doubt. In this state the rule is that a settlement may be opened for correction when it was based upon a mutual mistake of the parties, whether of law or fact. Hahn v. Hart, 12 B. Mon. 426; Louisville v. Zanone, 1 Metc. 151; Louisville v. Anderson, 79 Ky.

334, 42 Am. Rep. 220; Underwood v. Brockman, 4 Dana, 317, 29 Am. Dec. 407; Fitzgerald v. Peck, 4 Litt. 125. When was the mistake discoverable by the exercise of reasonable diligence? For that will be the date from which the statute will begin to run. In Louisville v. Anderson, supra, the question of limitation arose in an action to recover a tax paid under a mutual mistake of the parties. The court observed that: "The mistake was mutual, and both acted during the whole period as if the right to demand and receive was unquestioned." The point here raised was not decided because of the state of the pleadings. The statute which gives 5 years within which to sue to correct a mistake concedes that until the error is discovered the statute of limitation should be suspended, but not longer than 10 years in any event. A mistaken belief as to the law is a fixed state of mind until something comes to knowledge to disturb it. One does not go about forever doubting his own belief. Where there is nothing to put him on inquiry there is no call for diligence other than originally existed in the matter. Only within a few months before these suits were brought did the fiscal court learn that it had been in error in its previous understanding as to the commission allowed the sheriff by law. Nor, so far as shown, was the sheriff better informed. The inquiry came about through a determination to have the county's fiscal matters checked up by an expert accountant, who discovered the errors, and for the first time brought them to the notice of the parties. The overhauling of the books and accounts of the county seems to have been when a new administration succeeded the one whose errors and loose methods had caused or made possible the trouble now in suit. Or-

dinarily negligence or laches of public officials is not chargeable to the public. When the public elects officials, it has done all it can do for the time. If the officials are not so diligent as they might have been, their laches will not be imputed to the public, where no intervening right of a third person is to be affected. Furthermore, we seriously doubt whether there was a time when a controlling number of the public officials, charged with the duty of investigating Owen county's fiscal affairs for those years, were so situated as that they were free to act with that independence necessary to discover and make public the errors and frauds contained in these settlements, until the investigation was begun which led up to these suits. The statute did not begin to run until the errors were discovered—within five years of the bringing of the suits, and within ten years of the accrual of the cause of action. The facts of this case are materially different from those of Green County v. Howard, 127 Ky. 379, 105 S. W. 897, 32 Ky. Law Rep. 243. The difference in commissions, after correcting certain mathematical errors in the settlements, was as follows: For 1898, $890.33; for 1899, $770.38; for 1900, $686.57; for 1901, $900.50. The statute (section 4143, Ky. St. 1903) fixes a penalty of 6 per cent. on the amount of the taxes delinquent after the first of December in the year in which they are payable, to be collected off the taxpayer as the taxes are. This penalty when collected, or collectible, belongs to the county. Com. v. Pate, 85 S. W. 1096, 27 Ky. Law Rep. 623; Bates v. Knott Co., 67 S. W. 1006, 24 Ky. Law Rep. 73. Appellant collected penalties during the four years in question to the follow-

ing amounts: For 1898, $312.52; for 1899, $405.16; for 1900, $506.66; for 1901, $478.84.

It was claimed, in other cases prepared with this one, that there was an express agreement between the fiscal court and the ·sheriff that if the sheriff would promptly pay off claims against the county as they were presented, using his own money where necessary, instead of interest, the county would not require him to account for the penalties which he might collect. No record was made of the alleged agreements. Nor would a record of them have validated them. Such an agreement was beyond the competency of the fiscal court to make. .

Inasmuch as the settlement is opened on account of the mutual mistake, and for the other reasons assigned, concerning the allowance of commissions, it will be open for the correction of all errors and frauds practiced, although such latter errors or frauds might have been barred if standing alone. The settlement made by the sheriff is a single transaction. When it becomes final, whether by limitation or judicial pronouncement, it is final as an entirety. When, however, it is opened for fraud or mistake, then it stands as if the settlement had not been closed.

The claim of the county for the sums collected of so-called sleepers is really not a claim for taxes collected and unaccounted for. But it is in the nature of an action for breach of the sheriff's bond to well and duly perform the duties of his office. The statute not only prohibits the sheriff from collecting taxes before they are duly assessed and certified to him (section 4067, Ky. St.; Russell's St. sec. 5959), but it is made the duty of the sheriff to report to the county court for assessment all omitted lists and per-

sons coming within his knowledge (section 4241. Ky.
St.; Russell's St. sec. 6170). When the sheriff knew
that the persons and property constituting the list
of sleepers were not assessed, it became his duty, by
virtue of the statute cited, to cause them to be re-
ported for assessment. That he purposely failed to
do. In the meantime limitation has barred the coun-
ty of the right to assess such omitted property and
polls. Section 2515, Ky. St.; L. & J. Ferry Co. v.
Com., 57 S. W. 626, 22 Ky. Law Rep. 480; Chicago,
etc., R. Co. v. Com., 115 Ky. 278, 72 S. W. 1119, 24
Ky. Law Rep. 2124; Com. v. Nute, 115 Ky. 239, 72
S. W. 1090, 24 Ky. Law Rep. 2138. The sheriff's neg-
lect to perform his duty in that respect was a breach
of his bond, from which the county has sustained
damage in the loss of the taxes that would have been
due and collectible from the omitted items if assess-
ed. But the county could have collected only to the
limit fixed by the Constitution. Therefore it lost only
what it could have collected legally. The report of
the expert accountant shows that for the year 1898
the sheriff collected and failed to account for polls
and property tax, not assessed, $2,886.94; for 1899,
$1,516.24; for 1900, $2,477.33; for 1901, $1,849.55—
making $8,680.56, on that score. (This includes both
state revenue and county levy. But these suits in-
volve only the county levy. The proportion is easily
ascertained.) But it was developed on the trial that
some of these items so reported by the accountant
were really on the assessor's books, or conceded to be,
though generally under some initial, nickname, or dif-
ferent name, as to make it necessary to resort to ex-
traneous evidence to identify the persons as the
same. Of these items, the aggregate during appel-
lant's term is $1,140.32. Some of the items are polls

only; some are mixed polls and property; some for one year, and some for another. Without going into detail of them here, it is indicated how they should be carried into the settlement: The omitted polls should be charged to the year in which omitted, at $1.50 each; the omitted property should be charged to the year in which omitted at the rate of 85 cents on the $100 only. The report of the accountant, Charles G. Harris, as corrected by his list shown on pages 1995-1997 of the record, should be taken as basis of the settlement in the matter of sleepers. This report of Harris is adopted for the reason that it appears to us to have been made by a thoroughly competent and impartial accountant, after great labor and painstaking investigation. It is as accurate as it seems practicable to have made it under the circumstances. All doubts were finally resolved in appellant's favor, and he is in that report only charged with the sums shown to have been collected by him or his deputies. He and his counsel had the amplest opportunity to point out any errors in the report, and with his stub books in his possession he could unerringly have told whether the items charged against him were actually collected by him, or by his deputies for him, and accounted for by them to him. His failure to make objection to any item on the report as revised as being unauthorized by the facts is persuasive of the accuracy of the report as far as it went.

It is complained by appellant that as this action was only for the surcharging of his settlements had with the county court, which had been formally approved and recorded, it was error for the trial court to have gone beyond the function of correction, as it did in charging the sleepers to appellant. In an action in equity for specific relief, under a prayer

of general relief, on issue joined it is competent for the court to grant the parties any relief to which they may appear entitled, and which it is within the jurisdiction of the court to grant. Section 90 Civ. Code Prac.; Bank v. Coke, 45 S. W. 867, 20 Ky. Law Rep. 291; Lillard v. Brannin, 91 Ky. 511, 16 S. W. 349, 13 Ky. Law Rep. 74; Bridgeford v. Barbour, 80 Ky. 529. The circuit court did not err in granting the relief here indicated. But it did err in not granting enough.

The evidence discloses that the amounts collected by appellant, and not reported or accounted for by him were ascertained by sending into the county and gathering up all the receipts of taxpayers who could be found, and who would surrender their receipts to be copied or used in the investigation. Many persons refused to deliver their receipts; some had been lost or destroyed; other taxpayers had died or moved away. There were some 4,000 and odd voters in the county. The examination being conducted included, as has been said, a period of 10 years. Probably 135,000 tax receipts and property lists had to be examined, classified, re-examined, verified, and properly charged and credited. The sheriff refused to lend his aid in the examination further than, after the initial report was filed by the accountant and published in book form by the fiscal court of the county, appellant pointed out a number of errors, which are corrected in the lists as indicated in this opinion. Only about two-thirds of the tax receipts were produced to the accountant. The results herein stated were made up from the receipts actually produced or examined, with few exceptions. If the same ratio of wrongdoing by the sheriff had been maintained in

those not produced, the liability of appellant would have been increased probably one-third.

Of the taxes collected and paid over by appellant, about $30,000 a year, he claims that there was included the illegal excess levy indicated above, and that as he is under the authority of Whaley v. Commonwealth, supra, and Com. v. Baske, 124 Ky. 468, 99 S. W. 316, 30 Ky. Law Rep. 400, 11 L. R. A. (N. S.) 1104, liable to suit by persons who paid the excess, he should be given credit in this settlement for such excess. The most of the taxpayers of the county pay only small sums. The average is not over $8 a head of a family a year, including his poll. The excess would therefore average about 35 cents a year for each voter of the county. Limitation has barred the collection of all, or of practically all, of these items. The taxpayers have not sued for their recovery. The sums were voluntarily paid to the county, and have gone to defray its indebtedness. If the county had to repay these sums to appellant, it would result in a vast increase of the county's liabilities, to be finally borne by the taxpayers. The result would be to take from them illegally about $1,500 a year, and by judicial determination, because they elected to abide their payment, make them pay that much more, to be given to the sheriff, who has no right to it, legal or moral. The court of chancery will not lend its power to produce such an unconscionable result.

The judgments were for less than the appellee was entitled to recover. They are therefore affirmed on the original appeal. On the cross-appeal of the county the judgments are each reversed. Upon the return of the cases to the circuit court a settlement will

be made as of each of the years as herein indicated, charging appellant 6 per cent. per annum interest from the end of the year, on the sum found due for that year, and credit him on the sum found to be due by the judgment rendered heretofore, and which has been superseded, as of the date of the supersedeas.

Remanded for proceedings and judgment in conformity herewith.