## Alexander v. Alexander, et al.

(Decided June 10, 1913.)

### Appeal from Owen Circuit Court.

Sheriffs—Action Against Deputy—In Pari Delicto—Relief.—Where a sheriff assigns certain territory to his deputies and retains the balance of the county for himself, and collects and appropriates to his own use penalties and omitted taxes due the state and county, and knowingly suffers and permits his deputies to pursue the same plan in the districts assigned to them, and the state and county subsequently recover a judgment against him for the sum so collected, equity will afford him no relief in an action by him to recover of his deputies the sums unlawfully appropriated by them, where the evidence shows that there was a well arranged plan by which they were all to profit at the expense of the state and county, even though the sheriff received no part of the sums unlawfully appropriated by his deputies.

CLORE, DICKERSON & CLAYTON, H. W. ALEXANDER, H. G. BOTTS and W. A. LEE for appellant.

W. B. MOODY and J. G. VALLANDINGHAM for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, P. A. Alexander, was elected sheriff of Owen County for a term of four years beginning the first Monday in January, 1898. Prior to his election he approached defendant, L. P. Alexander, and requested him to make the race with him, and entered into a written contract with him by which he agreed to appoint defendant his deputy during his term as sheriff. After describing the territory in which defendant was to act as deputy, the contract provides:

"Said boundary is allotted to said deputy and all the sheriff's business therein, subject however to the rules, usages, practices and regulations heretofore common between high sheriffs and deputies.

"The within agreement is made on condition, that said deputy will conduct his business within the limits prescribed by the high sheriff, and will faithfully perform his duties as deputy sheriff and render his books and accounts for inspection by said high sheriff when called upon to do so.

"Said deputy is to have all profits arising from deputy's business that falls to him in said boundary."

On the first Monday in January, 1908, plaintiff qualified as sheriff by taking the oath of office and executing the various bonds required by law. Thereafter he annually renewed his various bonds as provided by statute. After assuming the duties of his office he appointed defendant a deputy and took from him a bond, signed by two sureties, by which they agreed, upon his failure to do or perform any of his duties as deputy sheriff, they would pay over to plaintiff any and all sums of money that the defendant failed to pay over, and all damages done to plaintiff by any acts of the defendant. Thereafter defendant made a settlement with plaintiff for each year of his incumbency as deputy.

Several years later the fiscal court of Owen County began an investigation of its fiscal affairs and the conduct of all of its ex-officials covering a period of thirteen years, including the term of plaintiff as sheriff. This investigation brought to light the fact that many thousands of dollars, which belonged to the State and county, had been collected by plaintiff and his deputies and retained by them. Of the amounts so collected some were for excess commissions, some were for penalties, and some were for taxes (called "sleepers") on omitted polls and property. Thereupon it brought a suit against plaintiff and his bondsmen to recover certain sums claimed to be due. After trial in the court below and a reversal of the judgment on appeal to this court, a judgment was entered against plaintiff for certain sums and interest aggregating $17,000. Plaintiff effected a compromise with the county of Owen by paying it $12,500. He also paid the Commonwealth of Kentucky the sum of $1,200 in compromise of certain suits brought against him by the Auditor of Public Accounts.

On February 9, 1911, plaintiff brought this action against defendant to recover certain excess commissions, penalties and "sleepers" for each of the years 1899, 1900, 1901 and 1902, which sums it is alleged defendant, in violation of law, collected and appropriated to his own use. Numerous defenses were made by defendant. Proof was taken and on final hearing plaintiff's petition was dismissed as to all items except the sum of $356, excess commissions collected by the defendant for the years 1900 and 1901. Judgment was given against the defendant for this sum and he appeals. Plaintiff prosecutes a cross appeal from that part of the judgment dismissing the petition as to the other items involved.

Defendant's principal defense is based on the fact that the sums collected and retained by him were fruits of the unlawful, fraudulent and unconscionable transaction in which plaintiff himself participated in such a way that equity will not afford him any relief.

The record discloses the fact that the sheriff had made for himself and deputies pretended copies of the assessor's books. He caused to be put on these books large amounts of property and many polls which were omitted from the assessor's books. He settled with the State and county by the assessor's books, and with his deputies by the pretended copies thereof, and thereby received and converted to his own use the difference. It is further shown that throughout the term of plaintiff, and, indeed, during the preceding term when he was a deputy sheriff, there existed a system of collecting taxes from the citizens and taxpayers who were not assessed, or whose names did not appear on the assessor's books, for the particular year, but whose property was actually subject to assessment and taxation for those years. The sheriff and his deputies collected such taxes as if the property had been assessed, but failed to report them as omitted or to account to the county for the sums so collected. The evidence leaves no doubt that the sheriff did this himself in the territory retained by him, and knew and acquiesced in the same line of conduct on the part of his deputies. Plaintiff, however, insists that the doctrine of *in pari delicto* should not be applied in this case because he received no part of the penalties and "sleepers" collected and retained by his deputies. In other words, it is argued that there was no joint interest or participation by plaintiff in the wrongs of defendant. On the contrary it is claimed that the wrong of plaintiff

and the wrong of defendant were entirely distinct, and that equity denies relief only in the event that one's hands are soiled in the transaction which is the subject of the action. In determining this question, however, the duties and relations of the parties must be taken into consideration. The statute not only prohibits the sheriff from collecting taxes before they are duly assessed and certified by him, but makes it his duty to report to the county court any assessment or omitted list of persons coming within his knowledge. Kentucky Statutes, sections 4067, 4241; Alexander v. Owen Co., 136 Ky., 420. When the sheriff knew, therefore, that the persons and property constituting the list of "sleepers" were not assessessed, it became his duty by virtue of the statute to cause them to be reported for assessment. He not only failed in his duty in this respect, but actually collected the omitted taxes himself and converted them to his own use. Not only so, but he knowingly suffered and permitted his deputies, including the defendant, to pursue the same course. The plan adopted, the practice pursued and all the attending circumstances show that there was a well arranged plan or scheme by which plaintiff and his deputies were to profit at the expense of the county and State. In such a case the sheriff can be a guilty participant without receiving any of the proceeds of the sums unlawfully collected by his deputies. Having devised the illegal scheme himself, and having set an example for his deputies by his own unlawful conduct, and having knowingly permitted his deputies to follow that example and to pursue the same corrupt practices in their respective districts, his participation in the unconscionable transaction was such as to soil his hands, even though he received from his deputies none of its fruits. A sheriff will not be permitted to say to his deputies, "Violate the law, collect all you can, keep all you get—I will do the same thing myself," and then recover the sums so collected and retained by his deputies, which he never intended to collect, had it not been for the action of the State and county in compelling him to account for such sums. The whole scheme being fraudulent and corrupt, and the taint being on him as well as his deputies, equity will afford him no relief.

No reasonable distinction can be made between "sleepers" and penalties, which were collected and retained by defendant. They belonged to the county and were part of the fruits of the unlawful arrangement.

It appears that prior to the adoption of the present Constitution there was in force a special act applicable to Owen county, fixing the commission of the sheriff at 7 per cent. It was held in Alexander v. Owen County, *supra,* that this special act was repealed by the general law regulating fees of sheriffs generally, which was subsequently enacted. We think it reasonably clear from the record that both plaintiff and defendant were laboring under the mistake that the special act was still in force, and that the allowance of commissions to the defendant at the rate of 7 per cent was due to this mistake. That being true, we are inclined to agree with the chancellor that the allowance of the excess commissions constituted no part of the unlawful scheme by which the sheriff's office was conducted, but was the result of an honest mistake on the part of the parties. It follows that a recovery of the excess commissions was properly allowed.

Judgment affirmed both on original and cross appeal.