## ROAD IMPROVEMENT DIST. NO. 4 OF CONWAY COUNTY, ARK., v. WILKERSON.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1925.)

No. 6647.

1. Appeal and error ⟲⟳1022(1)—Finding of master, confirmed by trial court, held presumptively correct.

Where case was referred to master at request of both parties, master's findings, confirmed by trial court, must be accepted as presumptively correct, and, in absence of obvious error in application of law, or serious mistake in consideration of evidence, should be permitted to stand.

2. Accord and satisfaction ⟲⟳11(1)—Compromise and settlement ⟲⟳5(2)—Acceptance and collection of check, reciting that it is in full payment of disputed claim, constitutes "accord and satisfaction."

Where there is dispute concerning claim, for which check or other remittance is made to creditor, reciting that it is in full payment thereof, and creditor accepts check or collects it without objection, transaction constitutes accord and satisfaction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accord and Satisfaction.]

3. Accord and satisfaction ⟲⟳23—Compromise and settlement ⟲⟳15(1)—Agreement to accept final estimate as final settlement impliedly included agreement that final estimate should be at least approximately correct.

Where parties to road contract agreed to settle dispute by accepting final estimate as final settlement of contract, their minds met on proposition that contractor should receive what final estimate should show he was entitled to, with implied understanding that final estimate should be at least approximately correct.

4. Accord and satisfaction ⟲⟳20—Compromise and settlement ⟲⟳8(4)—Settlement based on mutual mistake of material facts may be corrected or set aside.

A settlement based on the mutual mistake of material facts may be corrected or set aside.

5. **Accord and satisfaction** ⬤═20—**Compromise and settlement** ⬤═8(4)—**Mistake in final estimate held sufficient to destroy integrity thereof, and of accord and satisfaction based thereon.**

Mistake in final estimate on road contract, amounting to over $50,000 out of a total of about $400,000, *held* to destroy integrity of final estimate, entitling contractor to avoid effect of accord and satisfaction based thereon.

6. **Accord and satisfaction** ⬤═11(1)—**Compromise and settlement** ⬤═5(2) — **Contractor's failure to return proceeds of checks held not to preclude recovery of correct amount on discovering errors in final estimate.**

Where road district's checks, reciting that they were in payment of final estimate due road contractor, were received and deposited by person without authority to make accord and satisfaction in bank holding assignment of estimates and retained percentages, and contractor's president disclaimed knowledge of recitals, and indebtedness to contractor exceeded amount of checks, contractor was not precluded from recovering amount actually due, on discovering large errors in final estimate, merely because of failure to return proceeds of checks.

7. **Highways** ⬤═113(4)—**Provision of road contract held not to preclude contractor from recovering correct amount on discovering gross errors in monthly estimates.**

Provision of county road contract that engineer's decision as to value and quantity of work, as shown by monthly estimates, should be conclusive, in absence of fraud or error, *held* not to preclude contractor from recovering correct amount due on estimates, on discovering gross and palpable errors therein, carried into final estimate.

8. **Accord and satisfaction** ⬤═23—**Court of equity should not permit plea of accord and satisfaction to work injustice, if there is escape therefrom.**

A court of equity should not permit a plea of accord and satisfaction to work injustice, if there is escape therefrom.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by E. M. Wilkerson, trustee for the P. J. Lewelling Construction Company, against Road Improvement District No. 4 of Conway County, Ark. Decree for plaintiff, and defendant appeals. Affirmed.

Edward Gordon and H. G. Combs, both of Morrillton, Ark., for appellant.

Charles T. Coleman, Joe T. Robinson, Joseph W. House, and Walter G. Riddick, all of Little Rock, Ark., for appellee.

Before KENYON, Circuit Judge, and PHILLIPS, District Judge.

KENYON, Circuit Judge. This is an appeal from a judgment of the District Court

of the United States for the Eastern District of Arkansas in an action brought by appellee, trustee for the P. J. Lewelling Construction Company, to recover a balance alleged to be due said company for work and material furnished in the construction of a certain road or roads for appellant. Appellee claims that the P. J. Lewelling Construction Company entered into a contract with appellant to construct the roadbed of the proposed highway in accordance with the plans and specifications, and under the direction of the district engineer, and that the amount actually due for said work was $443,-102.20; that monthly estimates had been furnished by the engineers of materials and work done, amounting to $392,590, and that there is a balance due and unpaid of $50,-743.20. The original complaint asked for profits, which claim, however, has been abandoned. The claim at the time of suit was the property of E. M. Wilkerson, trustee for the P. J. Lewelling Construction Company.

Appellant contended in the trial court, and contends here, that, some controversy having arisen between the parties, a demand was made upon it by the Construction Company for a final estimate and release of its contract, and that such final estimate was made, which was accepted as a final settlement; said final estimate being known as "No. 27." This showed an amount due to the construction company of $13,634.54. Three checks were given therefor, in the respective sums of $5,210, $2,114.54, and $6,310. In two of these checks were these words: "In payment of final estimate due the Lewelling Const. Co." In the other check was this phrase: "Final estimate consummates contract." The final estimate was dated June 13, 1921. The checks above referred to were dated June 21, 1921. Mr. Dudley, who was treasurer and bookkeeper of the construction company, indorsed them in blank in the name of the construction company, by himself as treasurer, as appears on the checks, and delivered them to the Bank of Morrillton, which held an assignment of the estimates and retained percentages. Afterwards two competent engineers went over the work which had been done by the Lewelling Construction Company, and testified to shortages in the final estimates, making a difference in favor of the construction company in the amount of $50,624.84.

By consent of the parties the case was referred by the court to a master, with instructions to make findings and submit the same to the court. The master, after hearing the testimony of witnesses, reported to

the court that the account, as stated by the engineer of the district, was short, as shown by a table inserted in the master's report, in the sum of $50,624.84, less 32 cents admitted over allowance, and found that the claim of the trustee of the construction company for judgment in the sum of $50,624.52 was supported by a preponderance of the evidence. The court approved the findings of the master, and entered judgment for said amount and costs on the 25th day of May, 1923.

[1] The case being referred by the court to the master at the request of both parties, and the findings being concurred in and confirmed by the trial court, they must be accepted as presumptively correct, "and unless some obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand." Crawford v. Neal, 144 U. S. 585, 596, 12 S. Ct. 759, 36 L. Ed. 552; Tilghman v. Proctor, 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764; Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289; Furrer v. Ferris, 145 U. S. 132, 12 S. Ct. 821, 36 L. Ed. 649.

What were the findings of the master? They were: That there was gross error in the final estimate; that there was no testimony to show that Mr. Dudley had authority to bind the construction company to an accord and satisfaction by accepting the checks containing the statement that they were given "in payment of final estimate due the Lewelling Const. Co., which consummates contract"; that Mr. Lewelling had no reason to suspect that the accounts kept by appellant's agent were inaccurate; that he had the right to assume that the engineer was keeping accurate accounts; that the commissioners of the district proceeded on the same assumption, and neither party had knowledge that the engineer's accounts were materially inaccurate; that Mr. Lewelling agreed to settle on the basis of the final estimate; that the settlement was made under a mutual mistake as to material facts, and was not binding. The trial court entered decree in accordance with the master's report.

[2] The principal defense insisted on is that these checks, given for the amount of the final estimate, reciting that they were in payment thereof and consummated the contract, amount to an accord and satisfaction. It is a general principle of law that, where there is a dispute concerning a claim and a check

is given, or other remittance to the creditor, which recites that it is in full payment of the claim, and the same is accepted by the creditor, or if the creditor collects the check without objection, the transaction constitutes an accord and satisfaction. 1 R. C. L. § 32; Barham v. Bank of Delight, 94 Ark. 159, 126 S. W. 394, 27 L. R. A. (N. S.) 439; Bassick Gold Mine Co. v. Beardsley, 49 Colo. 275, 112 P. 770, 33 L. R. A. (N. S.) 852; Canton Union Coal Co. v. Parlin & Orendorff Co., 215 Ill. 244, 74 N. E. 143, 106 Am. St. Rep. 162.

[3] Is this broad proposition applicable here? There is testimony, which is referred to by the master to the effect that Mr. Dudley, treasurer and bookkeeper of the Lewelling Construction Company, had no authority to bind the construction company by accepting checks containing the statements as to payment and consummation of the contract. There is also testimony that the company had no notice of the particular wording of the checks regarding payment until this suit was brought. The master makes no specific finding as to the authority of Dudley, but the evidence shows he had no authority to bind the construction company by an accord and satisfaction. We do not consider this question, however, of controlling importance, for, as we view it, the decisive point in the case is the alleged mutual mistake as to the final estimate. These checks were in payment of and based upon the final estimate. There is a dispute as to whether or not Lewelling, who was president and evidently the controlling spirit of the construction company, knew of the estimate, and saw the same before the checks were given. The date of the estimate is June 13, 1921, and the date of the checks is June 21, 1921. He testifies he did not see the final estimate before the checks were given; that he did see a memorandum of the same made by one Nicholson. Other witnesses for appellant testified that they discussed the final estimate with him. He testified that he supposed the construction company had something in the neighborhood of $53,000 as retained percentages, and $6,000 or $7,000 due on classification; that he never understood that any settlement was being made for $13,000. These matters are much in dispute, but the fact is, whether Lewelling saw the final estimate before the checks were received by his company or not, that the settlement was based thereon, and this fact was established by the finding of the master. The minds of the parties met on the proposition that the construction company should receive

what the final estimate should show it was entitled to. We think there inhered in this the implied understanding that the final estimate should be at least approximately correct. Certainly the parties were not agreeing to settle on the basis of a final estimate that was clearly, manifestly, and grossly erroneous. Both parties, of course, intended that the final estimate should be reasonably accurate.

[4] A settlement, by whatever term it may be designated, based upon a mutual mistake of material facts, may be corrected or set aside. 1 Corpus Juris, p. 570, § 105, states the rule as follows: "An accord and satisfaction entered into and executed through mutual mistake of fact is not binding and may be rescinded. The general rule that a contract made upon an assumed state of facts as to which there was a mutual mistake may be rescinded applies to every form of contract including accord and satisfaction." 5 R. C. L. p. 899; Sheibley v. Dixon County, 61 Neb. 409, 85 N. W. 399; Byrnes v. Byrnes, 92 Minn. 73, 99 N. W. 426; State Sav. Bank v. Buhl, 129 Mich. 193, 88 N. W. 471, 56 L. R. A. 944; Kowalke v. Milwaukee Electric Railway & Light Co., 103 Wis. 472, 79 N. W. 762, 74 Am. St. Rep. 877; Alexander v. Owen County, 136 Ky. 420, 124 S. W. 386; Beck v. School District No. 2 in Bent County, 54 Colo. 546, 131 P. 398, 46 L. R. A. 279; 12 Corpus Juris, p. 351.

[5] The finding of the master of mistakes in the final estimate amounting to more than $50,000 on work aggregating in the neighborhood of $400,000 certainly shows such mistake and error as to destroy the integrity of the final estimate. It is not a mere mistake incidental to the transaction; it is a part of the very subject-matter. The master pointed out the mistakes established by the evidence. We think it is not necessary to set them forth. They covered shortages on grading, loose rock, solid rock, and earth excavation. Indeed, there seems to be very little dispute in the evidence that shortages in the engineer's monthly estimates did exist, and that they were carried into the final estimate.

It is a fair presumption, from the language of the master's report, that he found the settlement and the alleged accord and satisfaction were made upon the belief of both parties thereto that the final estimate prepared by appellant's district engineer was correct, that the checks were given upon that assumption, and that the settlement was made under the mutual mistake of fact. This finding and conclusion of the master was sup-

ported by evidence, was concurred in and confirmed by the court, and we consider ourselve bound thereby.

[6] The question is raised that the construction company never offered to return the money received from the checks. Under the circumstances disclosed by the record as to the receipt of the checks by one with no authority to make an accord and satisfaction, the immediate deposit of them in a bank holding an assignment of the estimates and retained percentages, the testimony of Lewelling that he had no knowledge of the words of the checks claimed to be evidence of accord, and the fact that the indebtedness as found by the master exceeded the amount of the checks, we do not think appellant should be precluded from recovery on the ground that the checks were not returned when it was discovered that the words referred to appeared thereon. In equity the amount of the checks should be credited on the account, and this was done. Nye v. Swan et al., 49 Minn. 431, 52 N. W. 39; Ludington v. Patton et al., 111 Wis. 208, 86 N. W. 571; Fosha v. O'Donnell, 120 Wis. 336, 97 N. W. 924.

[7] It is suggested that section D-5 of the contract was not observed. This section provides:

"The engineer shall furnish monthly estimates of the work done, upon which partial payments to the contractor shall be based, and, in the absence of fraud or error, his decision as to the value and quantity of work or material shall be final and conclusive. Any claim on the part of the contractor for damages, or furnishing extra labor or material, must be made in writing to the engineer at the time the alleged damage occurs, or the cause of the claim arises, and, unless such claim is so presented before the next estimate, it shall be held that the contractor has waived such claim, and he shall not be entitled to receive payment therefor."

This provision makes conclusive the decision as to the value and quantity of work as shown by the monthly estimates of the engineer in the absence of fraud or error. As the master has found palpable and gross errors, the section, of course, does not apply.

[8] This is an action in equity. The master has found that the appellant is indebted to appellee in the sum of $50,624.52. There is evidence to sustain this finding A court of equity should not permit a plea of accord and satisfaction to work an injustice, if there is escape therefrom. Substantial equities of the parties require payment of what is due. If the construction company has per-

formed this work, and furnished material to the extent which the master finds under the evidence, but has not been paid because of a mutual mistake as to the final estimate, there is no reason why, because of technical defenses, it or its trustee should be deprived of payment for work performed and material furnished. As the final estimate is based on mutual mistake, and as such errors are found in it as to destroy its integrity, the case stands in equity as if no final estimate had been made. If there is no final estimate there is no basis of settlement. The alleged accord and satisfaction is based on the final estimate and falls with it.

The findings of the master were supported by evidence. They were approved and confirmed by the decree of the trial court. We see nothing to call for our interference therewith. The decree is affirmed.