## Mason, et al. v. Cook, et al.

(Decided December 16, 1919.)

### Appeal from Graves Circuit Court.

1. Attorney and Client—Compromise of Action.—An attorney employed to defend an action, has no authority to compromise it, without the special authority of the client, authorizing the attorney to do so.

2. Attorney and Client—Compromise Judgment—Vacation.—Where a judgment has been entered against a party to a suit by the unwarranted action of his attorney, in agreeing to a compromise judgment, without the direction and consent of the party, it is the duty of the party to act promptly, by taking proceedings to vacate it, when the knowledge of its rendition reaches him, and if he, instead of promptly repudiating it, acquiesces in it, until other parties, relying upon the judgment, put themselves in positions, from which they can not extricate themselves, so as to place the parties in statu quo, if the judgment should be vacated, he is estopped to complain of it.

3. Sheriffs and Constables—Lien Upon Lands of Sheriff.—Section 4130, Kentucky Statutes, fixes a superior lien in favor of the Commonwealth, county or taxing district, upon any lands owned by a sheriff, at any time during the term of his office, to secure the payment of any money for which he may be liable to them and continues until it is paid, but this lien does not extend to lands, acquired by him after his term of office expires.

4. Sheriffs and Constables—Lien Upon Property of Sheriff.—Section 4176, Kentucky Statutes, impresses a lien upon all property owned by a sheriff or other collector of public dues, for money, which they owe the Commonwealth or the county, from the commencement of the action against them, until the judgment is paid, and against this lien the sheriff or collector of public dues is not entitled to exemptions, under the exemption laws.

5. Sheriffs and Constables—Surcharge of Settlement.—An action to surcharge the settlement of a sheriff upon the grounds of frauds and mistakes. in the settlement, is not barred by limitation, until five years after the frauds or mistakes have been discovered, or

by ordinary diligence should have been discovered, though the action can not be maintained, at all, after ten years have expired from the commission of the frauds or mistakes.

6. Sheriffs and Constables—Surcharge of Settlement.—The quietus granted by a fiscal court to a sheriff as provided by section 4130, Kentucky Statutes, does not bar an action to open the settlement and to recover from the sheriff and his sureties any money, which he may owe the Commonwealth, county or taxing district, and which has not been accounted for in the settlement through fraud or mistake, nor will such quietus protect persons, who have purchased lands from a sheriff, which he owned during his term of office from the enforcement of the lien provided for in section 4130, supra.

7. Sheriffs and Constables—Breach of Sheriff—Liability of Sureties. —Where a sheriff, instead of causing property which has been omitted from assessment for taxes to be assessed therefor, as it is made his duty to do, where such property is due to be assessed and to pay the taxes, but collects the taxes, as though an assessment had been made, and fraudulently appropriates the same to his own use. it is a breach of his bond for the faithful performance of his duties, and for such breach, he and his sureties are liable upon his bond and such liability is a lien upon his real estate within the meaning of section 4130, Kentucky Statutes.

8. Sheriffs and Constables—Failure to Account for Money Collected. —Where a sheriff collects moneys from taxpayers, who have been omitted from assessments, and does not report their property for assessment, but appropriates the money, and fails to account for it to the county or taxing district, his liability upon his bond, is the amount of the moneys so collected and appropriated, and the county or taxing district does not lose its right to recover same, because of its failure to minimize its losses, by causing an assessment to be made and the taxes collected again.

9. Sheriffs and Constables—Failure to Account for Money Collected. —Money collected by a sheriff from poll taxpayers and property, which has been omitted from assessment, and who and which were due to be assessed and to pay taxes, and the sheriff collects same, as though they were assessed, it is money received by him by color of his office, and for which he is liable upon his bond, provided for by section 4133, Kentucky Statutes, as provided by section 4027 Kentucky Statutes.

R. O. HESTER and AUBREY HESTER for appellants, W. L. Brand and W. L. Brand, Exor. of J C. Brand.

J. E. WARREN and B. C. SEAY for appellants, Mason, Harris, G. R. Allen V; E. Allen, and S. T. Hamilton, J. A. Hamilton, and Graves County Banking and Trust Company

AUBREY HESTER for appellant, Carrie Leonard.

ROBBINS & ROBBINS and W. J. WEBB for appellees, Stunston and Usher.

OPINION OF THE COURT BY JUDGE HURT—Reversing upon the appeals of W. L. Brand, executor of J. C. Brand, G. R. Allen and V. E. Allen, in part and affirming in part; and reversing upon the appeals of J. A. Hamilton and S. T. Hamilton, and affirming as to all other parties.

The appellant, W. L. Brand, was elected sheriff of Graves county, for the term, embracing the years, 1906, 1907, 1908 and 1909, and duly qualified as such, by executing the bonds, for each of the years of his term, which are required by law, and in each of these bonds, the appellant, G. R. Allen, the appellees, W. S. Cook, W. A. Usher and J. L. Stunston, became his sureties. The bonds and sureties, thereupon, were duly accepted by appropriate orders of the county court. For each of the years, a commissioner was appointed, by the fiscal court, to make a settlement with Brand, of his accounts as sheriff, touching the collection of the taxes, which were levied for each of the years, in Graves county, for county purposes, including the taxes levied for the benefit of the common schools of the county. The settlements were made, and whatever sums, if any, the sheriff appeared from the settlements to be owing, were paid by him to the authority or party entitled thereto, and after the settlements were made and approved, the fiscal court, for each of the years, granted to the sheriff a quietus as provided by section 4130 Kentucky Statutes.

In the early part of the year, 1911, the officers of the county, for some reason, suspected, that the settlements made by the commissioner with Brand of his collection and disbursements of the money received by him by virtue of his office of sheriff and due to the county, were incorrect, and that he had failed to perform his duties according to the tenor of his bonds, and thereupon, an investigation of his official conduct, was undertaken, and accountants were employed for that purpose, and, as a result of the investigation, the officials of the county, as alleged, learned, for the first time, on the 7th day of September, 1911, that, in the settlement for each of the years, there was a failure to charge Brand with large sums of moneys, which he had received as sheriff, and which was due the county, and the collection of which he had fraudulently concealed, and that, in each of the settlements, he had been credited by various sums of money, erroneously, and by which he was not entitled to credit,

and that by reason of these various errors and conceal-
ments, there, yet, remained in his hands unaccounted for
and not paid to the county, a sum of money in the ag-
gregate sum of nearly $20,000.00. Commissioners were
appointed by the fiscal court to demand of Brand and to
receive from him, the sums claimed to be wrongfully
held by him, but, upon demand, he failed to pay the sums
claimed, or any part of them. Actions were thereupon
instituted by the county against Brand and his sureties
upon the bonds, which had been executed by them, to sur-
charge the settlements made by the sheriff upon the
grounds of fraud and mistake, and to recover the sums,
claimed to be due from him to the county. A suit was
instituted for the money, alleged, to be due, from him,
for each of the years of his term as sheriff. The board
of education instituted a similar action, to recover a sum,
which it was claimed was due it from Brand, for taxes,
collected by him, which had been levied for its benefit.
Brand and his sureties filed a joint answer to the peti-
tion in each of the five actions, employing, for that pur-
pose, the same attorney. The answers consisted of
a denial of the averments of the petitions. After the ac-
tions had continued until in March, 1914, and the county
had taken a great deal of evidence, the cost of which it is
claimed, amounted to the sum of $3,000.00, but no evi-
dence having been taken by Brand, or his sureties, the
actions were submitted on the 5th day of March, 1914,
and judgments rendered in favor of the county against
Brand and his sureties in the bonds, for the following
sums: For the year, 1906, $4,168.53; for the year, 1907,
$2,882.97; for the year, 1908, $2,575.05, and for the year,
1909, $2,136.15, and in favor of the board of education
against Brand and his sureties in the suit, it was main-
taining, the sum of $2,215.35, making in the aggregate,
the sum of $13,978.05. No accrued interest upon the
sums was adjudged, which, at that time, must have
amounted to several thousand dollars, and the county
and board of education were, by agreement of the parties
as appears from the record, adjudged to pay all the costs,
which had been incurred in the actions.

Thereafter, on the 16th day of March, certain of the
sureties on the bonds of Brand, and against whom the
judgments had been rendered, filed an action against him
to require him to indemnify them against the payment of
one of the judgments, and, as incident to it, secured a
general order of attachment to issue against his prop-

erty, which was levied upon certain articles of personal property, and, on June 1, thereafter, Brand filed an answer, by which he claimed, that he was a housekeeper with a family, and entitled to certain articles of the personal property, levied upon, as property exempt from coercive process for the collection of his debts, but, did not question in any way, the validity of the judgment.

On June 15, 1914, Brand, as executor of J. C. Brand, filed his petition to be made a party to the same action, claiming the remainder of the personalty levied upon as the property of the estate of J. C. Brand, but, yet, failed to complain of, or question the validity of the judgments against him.

On June 1, 1914, the appellees, Cook, Stunston and Usher, who were three of the sureties against whom the judgments had been recovered, together with the appellant, G. R. Allen, who was another surety, satisfied the judgments against them and Brand, and after a return of *nulla bona,* Cook, Stunston and Usher, Allen refusing to join with them, brought an action against W. L. Brand, W. L. Brand as the executor of J. C. Brand, L. F. Mason, W. L. Harris, Carrie Leonard, J. A. Hamilton, Omar Dodson, S. T. Hamilton and Graves County Banking and Trust Company, and others who are not parties to this appeal, and averred, that they, and their co-surety, G. R. Allen, having been required to satisfy the five judgments, rendered against them and Brand, were entitled to be subrogated to the liens and the rights of action, which they averred, that the county and board of education had against the property of W. L. Brand, and, also, upon the real property, owned by him after his induction into the office of sheriff to secure the payment of the judgments, and prayed, that such property be subjected to the liens and applied to their reimbursement.

The appellant, G. R. Allen, having refused to join in this action, was made a defendant, because of his ownership of a tract of land, which had been the property of Brand.

W. L. Brand, on the 1st day of January, 1912, had conveyed to J. C. Brand, a tract of sixty acres of land, which the latter mortgaged to the Graves County Banking and Trust Company, to secure a debt of $1,700.00, and having died, the banking and trust company brought an action to enforce its lien upon the land, and for a settlement of the decedent's estate in which W. L.

Brand as executor of J. C. Brand, and the heirs and creditors of the decedent, were made parties.

W. L. Brand with G. R. Allen as his surety, owed a promissory note to J. L. Stunston, and to secure its payment, Brand had executed a mortgage upon an eighty acre tract of land, which he owned, to Stunston, and, on November 1, 1914, Stunston instituted an action against Brand and G. R. Allen to recover a judgment for the amount of the note, and for an enforcement of the mortgage lien, but, alleged, that the mortgage lien was inferior to the lien, held upon the land by himself, Cook, Usher and Allen as sureties in the bonds of Brand as sheriff. In this action, G. R. Allen filed an answer, in which he alleged certain grounds as an estoppel to the claim of the other sureties in Brand's bonds, to having a lien upon the land, and, also, pleaded certain representations of Stunston, as amounting to a release or waiver of his right to hold him as a surety upon the note. These grounds of defense were all denied by reply, and no evidence was ever taken to support them.

W. L. Brand owned a one hundred and sixty acre tract of land, which he had conveyed to V. E. Allen, and who, in turn, had conveyed same to G. R. Allen, and when the appellees sought to enforce the lien claimed by them upon this tract of land, V. E. Allen became a party to the action by petition, which was made his answer, and a counterclaim and cross-petition against the appellees and certain other persons among whom was the Graves County Banking and Trust Company.

The actions, above named, together with certain others, which need not be referred to, were consolidated, heard and tried together under the style of W. S. Cook, et al. v. W. L. Brand, et al., and the judgment, rendered in these consolidated actions, is the one from which the appeal, which we are now considering, was taken.

The appellants, L. F. Mason, W. L. Harris, Carrie Leonard, J. A. Hamilton, Omar Dodson and S. G. Hamilton, were the owners of lands, which had been owned by W. L. Brand since his induction into the office of sheriff, and had been transferred, by him, to them, and they were made parties to the actions for the reason, that the appellees claimed a lien upon their lands under the statute, section 4130, Kentucky Statutes, and sought its enforcement in the action, brought by them on June 1, 1914.

The pleadings and evidence in the four actions of Graves county against Brand and his sureties, and in the action of the board of education of Graves county against the same persons, were offered, filed and read as evidence in these consolidated actions without objection.

The appellees, J. L. Stunston, W. A. Usher, and the appellant, G. R. Allen, having, during the pendency of the consolidated actions, refunded to W. S. Cook, the amounts paid by him in satisfaction of the judgments rendered in favor of Graves county and the board of education and against Brand and his sureties. and he having transferred his rights in the matter to Stunston, Usher and Allen, no judgment was rendered in his favor in the consolidated actions, and the appeals are therefore dismissed as to him.

To make intelligible the questions to be considered upon this appeal, it is necessary to state the conclusions, arrived at by the trial court as embodied in its judgment, but, only such portions of the judgment will be referred to, as relate to the matters in controversy between the appellees, and such of the parties, as have appealed from the judgment. The court adjudged, that the attachment, issued on March 16, 1914, and levied upon the personal property of W. L. Brand, should be sustained, and the property sold for the purpose of paying the proceeds upon the claim of appellees; that the estate of J. C. Brand being indebted to W. L. Brand in the sum of $1,400.00, which was allowed as a claim against the estate of J. C. Brand, and that the appellees, Stunston, and Usher have a lien upon same, and that it should be paid to them upon their claim against W. L. Brand.

The sixty acre tract of land, conveyed by W. L. Brand to J. C. Brand, was adjudged to be sold, and that Stunston, Usher and G. R. Allen have a lien upon it to secure the payment of the judgments of the county and the board of education, and, that the Graves County Banking and Trust Company, by reason of the mortgage by J. C. Brand to it, had a lien upon the land, but, inferior to the lien of Stunston, Usher and Allen. The appellees, Stunston and Usher, and the appellant, G. R. Allen were adjudged to have a lien upon the proceeds of the sale of the eighty acre tract of land, owned by W. L. Brand, and upon which he had executed a mortgage to Stunston, superior to the lien of Stunston. Stunston was given a personal judgment against Brand and G.

R. Allen for the amount of the note, which Brand and Allen owed to Stunston. Stunston, Usher and Allen were adjudged to have a lien upon the lands, sold by Brand to Carrie Leonard, L. F. Mason, Omar Dodson, W. L. Harris, J. A. Hamilton and S. T. Hamilton respectively, but, inferior to the lien, which these parties had upon the lands, owned by them for the value of improvements, placed thereon, since their respective ownerships. Stunston, Usher and G. R. Allen were adjudged to have a superior lien upon a one hundred and sixty-five acre tract of land, which had been owned by V. E. Allen, but, inferior to a lien in favor of Allen for improvements, etc., in the sum of $6,779.45. The claim of V. E. Allen against the Graves County Banking and Trust Company for $2,996.55, growing out of the purchase of the land by Allen, was dismissed. It was further adjudged that certain lots, which had been conveyed by W. L. Brand to J. C. Brand deceased, were in lien to the judgments of the county and board of education. Each of the tracts of land upon which it was adjudged, that Stunston, Usher and G. R. Allen had a lien by subrogation to the rights of the county and board of education, were adjudged to be indivisible without impairing their values and to be sold, and the proceeds retained by the master commissioner to be disposed of in accordance with future adjudications.

Each of the appellants, except G. R. Allen, made a separate defense to the actions against them, which, either attacked the validity of the judgments in favor of the county and board of education against Brand and his sureties, or, else, denied that such judgments were a lien upon the lands, owned by them, but these grounds of defense may be considered as to each of the appellants at one time, and such defenses as were peculiar to either one of appellants, will be considered separately.

(1) W. L. Brand urges, that the judgments in the actions of the county and board of education against him and his sureties upon his bonds as sheriff, and upon which the present action is founded, were not valid as to him, because they were arrived at by a compromise, entered into by his attorney for him without his knowlededge or consent, and by fraudulent collusion between his attorney and his sureties, and representatives of the county and the board of education.

(2) All of the appellants, except G. R. Allen, insist, that the matters for which the county and board of edu-

cation recovered the judgments, were things for which Brand was not responsible upon his bonds as sheriff, and the sureties were not liable therefor, and in any event, they were not liabilities to secure the payment of which the county or board of education had a lien under the statute upon the real estate of Brand, either in his hands, or in the hands of persons to whom he conveyed same and the sureties could not voluntarily assume the liabilities, as they would, by agreeing to a judgment against them and then have a right of subrogation to any rights of the county or board of education.

(3) The action to surcharge the settlement for the matters, growing up from the duties of Brand as sheriff for the year, 1906, was barred by limitation.

(1a) The averments made by Brand in his various amended answers to the effect that the judgments of the county and board of education were arrived at by compromise, and were procured against him by fraud, were, all, denied by a reply in which the appellees alleged, that the judgments were not agreed upon, but, that certain matters, involved in the suits, in which the judgments were recovered were, by agreement, eliminated, and to the amount of the recovery in each of the judgments, Brand agreed to, and that his attorney carried out the agreement by Brand's special authority and directions. The only testimony, however, upon this question, was such as was given by Brand and two of the sureties against whom the judgments were rendered. We conclude, from the evidence, that the amount of the judgments and things, sued for, for which the judgments were rendered were arrived at by agreement or else the matters sued for, for which no judgments were to be rendered, were eliminated by agreement so far as they were judgments against the sureties, but whether the judgments as to Brand were judgments by the court without reference to any agreements between the parties, does not distinctly appear. It will be immaterial, however, whether the judgments were resisted by Brand and his sureties, or whether they were confessed, if the matters for which the judgments were recovered were liabilities for which the bonds were responsible, and for which the sureties were bound upon the bonds, and this subject will be hereafter considered in this opinion, and the charge of fraud, in procuring the judgments, made by Brand will now be considered.

Brand testified, that he did not know of the rendition of the judgments of the county and board of education against him and his bondsmen, until the suit, for indemnification was brought on the 16th day of March, or just eleven days thereafter, at which time, he was obliged to become acquainted with the facts. As before stated on June 1, and June 15, thereafter he filed pleadings, in this action, without questioning the validity of the judgments.

Thereafter, on June 27, he filed an answer in the action, brought against him, and the appellants by Cook, Stunston and Usher, and, he, yet, did not charge, that the judgments in favor of the county and board of education were procured by fraud, nor did he ask that they be cancelled, but, he did aver that he did not consent to the judgments being rendered and that he did not know whether the recoveries were for correct amounts or not, and that he had abandoned the defense of the action at that time, and that no one, then, represented him in the causes. Another amended answer was filed by him upon November 18, 1914, in which he charged, that his former attorney and sureties had agreed with their adversaries to the rendition of the judgments, and in that way, they were fraudulently procured to be rendered against him. Another amended answer was filed by Brand, on December 19, 1914, in which, substantially, the same allegations were made as in the last previous amendment, and in one of his amendments, he asked, that the judgments, which were sought to be enforced, be cancelled, and in these amended answers, he alleges, that his attorney, who had been representing him in the suits up to near the time of the rendition of the judgments, had ceased to be his attorney, and had ceased to act for him. When Brand testified as a witness, however, he failed to prove, that the attorney had ever ceased to act for him or that he had discharged him as such, or in any way, had severed his connection with him, but did testify, that when informed in the month of February previous to the rendition of the judgments, that, inevitably, very large judgments would be recovered against him and his sureties, and that the county had made overtures looking to a compromise, that he directed the attorney to tell the sureties in his bonds, that he would make no further effort to resist the recoveries, and that the sureties could take such steps, as they saw proper to protect themselves. It was, also, proven, that, at a conference be-

tween the attorney and the sureties, when discussing the terms upon which a settlement could be made, and presumably the terms, to which it was thought, the county and board of education would agree, it was suggested, that the attorney confer with Brand, and ascertain if he would consent to the terms, but, the attorney answered, that he did not think, that Brand would agree to it, but that he, as his attorney, would agree to it, and that would bind Brand. As to what were the terms to which the attorney said, that he would agree for Brand, do not appear, nor does it appear, that the amount of the recoveries was ever the subject of agreement between the representatives of the county and board of education, and the sureties of Brand and his attorney.

It will be observed, that the records of the judgments to which great consideration must be given, do not show, that the amounts, recovered, were the subject of agreement, or compromise, but, that the costs were agreed to be paid by the county, which was necessarily the subject of agreement, as otherwise, the cost would follow the judgments. The further fact, that no items of interest were recovered by the county, would indicate with the other circumstances, that the judgments were arrived at by agreement between the parties. Conceding, however, that the judgments were based upon the agreements between the sureties and the representatives of the county and board of education, the circumstances are such as to preclude the idea, that the judgments were procured by fraud. There is no charge of any fraudulent collusion between the adversary parties to procure an improper judgment against Brand and the motive, which he assigns as the reason for the sureties agreeing to judgments amounting to $14,000.00, and which they knew would have to be paid by them, is far from convincing. The fact that interest upon the amounts, sued for to the sum of several thousand dollars, and a large amount of the principal of the claims sued for were forgiven, as well as the undertaking on the part of the county to pay all the costs amounting to the sum of $3,000.00, or more, indicates conclusively, that the attorney, representing Brand, was endeavoring to do the best for him possible under the circumstance and did do so. It will not be overlooked, that Brand did not testify himself, and no evidence was taken in his behalf by him, and as he avers, was not present when the evidence was taken against him, it would seem to indicate, that he was not taking a

very great interest in what might be the results. It is, however, not shown, that the attorney representing him and the sureties had any special authority from Brand to agree to the judgments for him, although it very clearly appears from Brand's conduct and actions and what he himself testifies, what he said to the attorney, that the attorney was impressed with the belief, that he was authorized specially to make an agreement for Brand for a judgment against him, which would be the best settlement, that could be made for him. The law is well settled, to the effect, that an attorney employed to defend a cause, has no authority to compromise it, unless he is specially authorized by the client. Hall v. Wright, 138 Ky. 81; Harrow v. Farrow, 7 B. M. 126; Givens v. Briscoe, 3 J. J. M. 529; Harrodsburg Saving Institution v. Chism, 7 Bush 539; Brown v. Benger, 43 S. W. 714; Cox v. Adeldorf, 21 K. L. R. 421; Benedict v. Wilhoite, 26 K. L. R. 178. Hence, it appears, that the agreement to compromise the case, while an unauthorized act by the attorney, was not fraudulent except in legal contemplation. The attack of Brand upon the judgments in this action, however, is a collateral one, and the general rule is, that a party to an action not a privy can not attack collaterally a judgment upon the ground of its procurement by fraud. This court, however, held in Fort Jefferson Improvement Company v. Green, 112 Ky. 55, that a party against whom a judgment was fraudulently procured, could attack it and secure its cancellation in an action to enforce it, if in the same court wherein the fraudulent judgment was rendered. A party against whom a judgment is obtained by an unwarranted action of his attorney in making a compromise, must, however, act promptly, when the knowledge reaches him, and if he acquiesces in it, until the other parties to the judgment so act in reliance upon it, that they can not be put *in statu quo* if the judgment should be set aside, he will be estopped to complain of it. Loughridge v. Burkhart, 147 Ky. 457; 15 R. C. L. 713. When Brand admits, that he abandoned the defense of the actions, he was obliged to know that judgments would be rendered and that his sureties would be obliged to pay them, and when he authorized the sureties, by his message to them to make the best shift for themselves possible, he in effect authorized them to assume charge of the defense and to arrange the matter as best they could, and when he learned, eleven days

thereafter, that the judgments had been rendered, he should have promptly repudiated them, if he had any grounds upon which to do so, or intended to do so, but, he failed to take any steps to vacate the judgments, or to pay them, but acquiesced in them, until his sureties had been required to satisfy them, and if the judgments were vacated, the sureties nor the county could be put *in statu quo*, and hence he is now estopped to attack the judgments upon the ground, that they were caused by an unwarranted compromise made by his attorney, if such was the case.

(2b)    The subjection of the personal property of Brand to the payment of the judgments, was authorized by section 4176, Kentucky Statutes, which is as follows: "Judgments in the name of the Commonwealth or county against sheriffs and other public collectors, their sureties, or their heirs, devisees or personal representatives, or any of them, shall bind the estate, legal or equitable, of all the defendants to said judgments from the commencement of the action or motion, till satisfied. . . ." This is an old statute and was construed in Harlan v. Lunsden, 1 Duv. 86, and in Cook v. Com., 8 Bush 221, in the latter of which cases, it was held that, the claim of exemptions, under the exemption law, was unavailing against the lien of the Commonwealth provided by the statute quoted, and since that time; the lien by the statute has been extended to judgments against collecting officers, in favor of the counties. The provisions of the same statute impress with a lien, which may be enforced to satisfy a judgment in favor of the Commonwealth or a county, any real estate owned by a sheriff or other collecter of public dues, which the sheriff or collector may own at the institution of the suit in which the judgment is rendered, or may acquire during its pendency, and until the judgment is satisfied. The pendency of the action and the existence of public record of such unsatisfied judgment, is notice to all persons of the existence of the lien.

. (c)   A defense is offered by certain of the appellants to the effect, that they innocently acquired real estate from Brand, during his term of office, without knowledge of any defalcations upon his part, and after he had been granted a quietus by the fiscal court for the years of his service previous to their acquirement of the lands, and for such reason, the county or taxing district is estopped to assert a lien upon their lands. The

granting of a quietus by the fiscal court, to a sheriff or collector of public dues, has never been held to estop the county or any taxing district from opening the settlement, upon the approval of which, a quietus is granted, upon the grounds of fraud or mistake in the settlement, and the recovery from the sheriff and his sureties of the sums due the county or taxing district, and which have not been accounted for in the settlement by the fraud of the officer or by mutual mistake of the officer and commissioner with whom the settlement was made.

Upon common law principles the contention of the appellants in this case, can not avail them, as they do not allege, that they, at any time, had any knowledge of the existence of a quietus, or that same influenced in any way, their actions in the premises. Section 4130, Kentucky Statutes provides, that: ''The Commonwealth, the county and taxing district shall have a lien from the date the sheriff begins to act upon the real estate of the sheriff therein secured or afterward acquired by him, which shall not be discharged until the whole amount of money collected by the sheriff or collector, or for which he may be liable to them, respectively, shall have been paid.'' . . . This statute is indeed a drastic one, but, it is notice to every one, who may purchase lands from a sheriff, which he owned at the time of his induction into office, or acquires while holding the office, that he, in a way, becomes the surety of the sheriff to the extent of the value of the lands acquired from him, for all the moneys which the sheriff may quit the office of sheriff owing to the state, county or any taxing district, which he may have collected for them, or for which he may be liable to either of them. The statute does not provide, that the granting of a quietus shall be cause for setting aside its terms, but specially provides, that the lien shall continue until the money shall have been paid. The granting of the quietus is not for the purpose of notice to the public, but, is only one of the means, which are provided for the counties and taxing districts, to protect themselves against the continuation in office of an officer engaged in fraudulent peculations, but, it does not satisfy the demands upon him.

The claim that the action concerning the taxes levied for the year, 1906, was barred by limitation, is not availing. The action, it is true, was brought a short time, after the expiration of five years from the approval of the settlement of the collection of taxes for the year,

1906, but, it was an action seeking to surcharge the settlement for relief from fraud and mistake, in its making and it is alleged and proven, that it was brought within five years after the discovery of the frauds and mistakes contained in it and within ten years from the commission of the frauds and mistake, and the evidence clearly shows, that the frauds and mistakes, by ordinary diligence, could not have been sooner discovered. The statute of limitation does not begin to run against the claims asserted in the action, until the frauds and mistakes by ordinary diligence, ought to have been discovered. Section 2519, Kentucky Statutes; Green v. Salmon, 23 R. 517; Bennett Coal Co. v. East Coal Co., 152 Ky. 838; Providence Assurance Society v. Withers, 132 Ky. 541; Hieronymous v. Marshall, 1 Bush 508; Cavanaugh v. Britt, 90 Ky. 273; Dye v. Holland, 4 Bush 635.

Another ground urged by the appellants, why the sureties in the bonds of Brand were not liable for the judgments, and for the reason of having agreed to them, did so voluntarily and for such reason were not entitled to be subrogated to the rights of the county and taxing district, and the matters, which were the subject of the judgments, were not such as the statutes created a lien upon the real estate of the sheriff then owned or afterward acquired by him, is as pleaded, in the answers, that a large part of the judgments was, on account of sums of money, which Brand had collected as taxes, from persons and property, which had never been assessed for taxation and never certified to him for collection, and other sums embraced in the judgments were, on account of commissions allowed Brand in the settlements, which were in excess of the rate, prescribed by law, and that other sums embraced in the judgments, were for illegal fees allowed Brand by the fiscal court, and paid by him. Neither Brand, in his answers, nor any of the other appellants, alleged that the foregoing, were the entire subject matters of the judgments, nor do they allege, that Brand did not collect and appropriate, to his own use, the moneys, received from the collections of taxes, that were not assessed nor certified to him for collection, nor that he did not receive in the settlements, the benefits of the unlawful commissions and fees, but the contention is, that the sureties, in the bonds, were not bound for their principal's actions, in those particulars, and that the claim of the county against Brand for collecting

moneys, for taxes, which were unassessed, was a mere claim for damages, and that the county had forfeited its right to recover anything, on that account, because it failed to minimize its loss by causing the assessments to be made and collecting the taxes after the discovery, that such property had not been assessed for taxation. Some of the answers assert, that the illegal fees and commissions amount to one sum, and others allege, that they amounted to other sums, and there is as great a divergence in the different answers, as to the amounts, which it is alleged, were embraced in the judgments, arising from the collections made by Brand, as taxes upon property and polls not assessed and certified to him for taxation, but the principle applicable, may be applied, whether the sums are one amount or another. Touching the illegal fees and commissions in excess of what the law allows a sheriff for collection, it is only necessary to say, that Brand having received credit in his settlements by fees and commissions to which he was not entitled, left in his hands, and not paid, by him, sums of money equal to the unlawful fees and commissions, and which arose from taxes, upon property and persons regularly assessed and certified to him for collection, and it can hardly be contended, that his sureties were not bound upon his bonds for such sums. The cases of Dawson v. Lee, 83 Ky. 49, and Whaley v. Com., 110 Ky. 154, cited by appellants, are not applicable to the facts of this case. In the first of the cases, cited, the surety was not in reality a surety, and for that reason, was not bound on the bond, and having voluntarily paid a defalcation, was denied subrogation, and in the second case, it was held, that the sureties were not bound for an unconstitutional tax, collected by a sheriff.

Touching the collections made by Brand, which he pretended were taxes being collected by him, but where the property and person had not been assessed, nor the taxes therein certified to him for collection, there is no dispute of the fact, that the persons and property were subject to be assessed and due to pay the taxes, and that Brand collected same, together with interest and penalties, as though the assessments had been regularly made and, in his settlements, fraudulently concealed the collections and appropriated the money to his own use. One of the covenants of his official bond was that "he, by himself and deputies shall well and truly discharge all the duties of the office" of sheriff. The bond executed

by him for the collection of the county levy covenanted, "that the said W. L. Brand, sheriff, shall, in all things, well and truly perform the duties of collector of the county levy of said county." The bond provided for in section 4133, Kentucky Statutes, covenanted, that he, as "sheriff, shall faithfully perform his duties." The bonds were executed and accepted within the time prescribed by law, so as to make them statutory bonds, and hence, the lien provided by statute, section 4130, *supra,* upon his property existed, and the reason for holding that it did not exist, in Hall v. Com., 8 Bush 378, does not apply. Section 4027, Kentucky Statutes, provides, that the last mentioned bond shall bind the sheriff and his sureties for all moneys, which shall come to his hands by virtue or color of his office. Section 4241, Kentucky Statutes, makes it the duty of the sheriff to cause all property omitted from assessment for taxation to be assessed and a failure to perform this duty, is a breach of his bond, in that he is not faithfully performing the duties of his office. If the claim for such a breach is a matter of damages suffered by the county or taxing district by a failure to perform this duty, as said in Alexander v. Owen County, 136 Ky. 420, the damages are sums of money, which are thus lost to the county. In the instant case, Brand had knowledge of the property, which had been omitted from the assessment, because he collected the taxes, as if it had been assessed and appropriated the money to his own use. It is contended, that he is not liable upon his bond for such damages, because he could not be guilty of embezzlement for collecting and appropriating such moneys, as was held in Com. v. Alexander, 129 Ky. 429.

The reason of his criminal guilt of the crime of embezzlement being absent, is that the sheriff is forbidden by statute to collect taxes until the assessment is certified to him for collection, and to constitute the crime of embezzlement the property embezzled must have been legally in his custody. The liability upon his bond for the failure to cause omitted property to be assessed, and then to collect the taxes and account for the money, rests upon other and different grounds. It is a civil liability created by his bonds, and the covenants thereof. Neither does the fact, that the officials of the county after discovering the omissions, where the sheriff had made collections, as though the assessments had been made, lose its right to recover the sums from the sheriff and his

bondsmen, because no effort was made to minimize the losses, by undertaking to assess the property and again harass the citizens, with a second collection of what was due from them, because, the sheriff is the officer of the county upon whom the duty is imposed of causing the assessment to be made in due time. To undertake to make the assessment of omitted property several years after the time, when it should have been done, when the property has changed hands and been lost or destroyed, and the owners dead or removed, would not only be impractical, but, in the greater number of instances, impossible. The taxes due from non-assessed property, and also, polls, which have been collected by the sheriff, is money which came to the hands of the sheriff by color of his office. The lien provided for by section 4130, *supra,* upon the real estate of the sheriff, it will be observed, is not to secure the payment, alone, of taxes regularly assessed and collected by the sheriff, but the lien exists, in favor of the county, taxing district and state for any money, "for which he may be liable to them respectively."

Section 4130, Kentucky Statutes, *supra,* however, does not create a lien upon the real estate of the sheriff, except such as he was the owner of at some time, during his time in office. While the statute, in terms fixes the lien "from the date the sheriff begins to act upon the real estate of the sheriff therein secured or after acquired by him," it does not by its terms, fix a lien upon real estate acquired by one, who is not a sheriff, and so drastic a statute, will not be extended beyond its terms. Any other construction would fix a lien upon real estate of one who had once been a sheriff, for any defalcation, that might be discovered for years thereafter, and would result very disastrously to a purchaser from him, however innocent. Section 4176, *supra,* fixes a lien as heretofore stated, upon any lands owned by Brand, at the beginning of the actions by the county and board of education, on February 23, 1912, and upon any lands thereafter owned by him, until the judgments are satisfied. Hence, the lots, which were conveyed to W. L. Brand, one by A. L. Brand, on May 8, 1911, one by Mollie Kennedy, on May 2, 1911, one by Lula Boone, on May 5, 1911, and another by W. A. Usher, on May 8, 1911, and all four of which were conveyed by W. L. Brand to J. C. Brand on May 8, 1911, were not in lien to the judgments against Brand and his sureties as they were not owned

by W. L. Brand, while sheriff, and were disposed of by him before the institution of the actions upon his bonds.

For the same reason, the lands acquired by W. L. Brand on March 15, 1911, and conveyed to S. T. Hamilton, on March 22, 1910, nor the lands acquired by Brand on March 15, 1910, and conveyed to J. A. Hamilton, on March 22, 1910, were not in lien to the judgments in favor of the county and board of education.

It does not appear, that the action was prepared, in the trial court, with reference to the dates, within which the ownership of lands by W. L. Brand would cause them to be in lien to the judgments, and for that reason, it can not be distinctly ascertained from the record, whether the lands conveyed to G. R. Allen and W. A. Usher, and described as a "business house and lot situated in Mayfield (with improvements thereon) beginning at the S. W. corner of the said house at the center of the wall between this lot and the R. H. Creason building on the east of Prairie or Seventh street, thence north with Prairie street to center of brick wall on north side of Usher building, being 45 feet more or less, etc.," and, also, a tract of land or a portion of a tract, which was conveyed to V. E. Allen, by W. L. Brand, and is described as "being in the N. E. Quarter of section 2, township 2, range 1 east, containing one hundred and sixty-five and one-half acres," are or are not subject to the lien of the judgments, in accordance with the principles of this opinion, and, hence, upon the return of the cause to the trial court, the parties should be permitted to prepare it for trial, with reference to whether the judgments are a lien upon the two pieces of property, and the court may determine such question according to the principles of this opinion.

The complaint made in brief of V. E. Allen against the Graves County Banking and Trust Company, can not be considered, as, in the statement of his appeal, he does not make the Banking and Trust Company an appellee.

The appeals are dismissed as to W. S. Cook, and the judgment is reversed, upon the appeal of W. L. Brand, executor of J. C. Brand, G. R. Allen and V. E. Allen, to the extent indicated in the opinion and upon the appeals of S. T. Hamilton and J. A. Hamilton, and, in all other respects, the judgment is affirmed.