# Knox County et al. v. Lewis' Administrator et al.

(Decided Feb. 13, 1934.)

(As Modified on Denial of Rehearing April 17, 1934.)

· MARTIN T. KELLY, V. A. JORDAN and TUGGLE & TUGGLE for appellants.

.· H. H. OWENS, JAS. S. GOLDEN and GOLDEN, GILBERT & GOLDEN for appellees. .

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

At the regular November election, 1925, S. L. Lewis was elected sheriff of Knox county, Ky., for a term of four years; beginning the 1st day of January, 1926. In December, 1925, with the Maryland Casualty Company, of Baltimore, Md., as his surety, he executed what is commonly known as his offiicial bond and also a "county revenue bond," the first in the penal sum of $5,000, the latter, $10,000. On the 1st day of January he qualified by taking the oath of office and causing his bond to be approved by the judge of the county court and recorded in the county clerk's office of the county. Each year thereafter, during his term of four years, he executed and delivered with the Maryland Casualty Company the official

bond and the county revenue bond, which were properaly approved by the county judge. At the beginning of the year 1926 he received from the outgoing sheriff the tax books showing the uncollected taxes, and proceeded to collect the 1925 taxes unpaid on January 1, 1926. During each of the years 1926, 1927, 1928, and 1929 he made a settlement with the fiscal court, through its commissioner, which was accepted and approved. Also he was collector of the taxes for the county board of education for the same years. He seems to have made no settlement for the taxes collected for either year for the county board of education.

This action was instituted by Knox county and the county board of eduction to surcharge the settlement of Lewis made each year with the fiscal court and to compel settlements of his collection of taxes for both the county and the county board of education, for each year. The petition points out the defects in his settlement with the fiscal court; each credit charged to be improperly allowed and each item charged to be improperly or not at all accounted for by him in each settlement, as well as the total taxes, for which he should have accounted to the county and the county board of education.

A special demurrer was presented to the petition on the ground the county treasurer was not a party plaintiff. This objection, even if a valid one, which we do not decide, was overcome by an amended pleading, making Tom Harris, the treasurer of the county, a plaintiff. Perry County et al. v. Holliday et al., 231 Ky. 587, 21 S. W. (2d) 989.

In the preparation of the case, an audit was made by an auditor selected by the county, one by an auditor selected by Lewis, and still another by the commissioner of the court. The auditor selected by Lewis adopted the same method or system for ascertaining the status of Lewis' accounts as tax collector, and for determining the result, used by the auditors in Livingston County et al. v. Dunn, 244 Ky. 460, 51 S. W. (2d) 450, 453. The commissioner of the court adopted and used the same method as the auditor of Lewis for like purposes. Without detailing the report of Lewis' auditor, or the method used by the court's commis-

sioner, it is our conclusion that their audits are predicated on erroneous and improper premise. For the reasons assigned in the Dunn Case, without reiteration, it is our conclusion the results ascertained by the audits by the accountant selected by Lewis and the commissioner of the court should be disregarded.

In Bush v. Board of Education of Clark County, 238 Ky. 297, 37 S. W. (2d) 849, the various sections of the statute dealing with the subject-matter involved in the present case were considered. In Livingston County v. Dunn again we reviewed with approval these sections as interpreted and applied in the Bush Case.

In the last case we said:

"He (the sheriff) must account for and pay to the county the amount of taxes as shown by such books (the tax books as made out by the county clerk) and his receipt to the county clerk."

The sheriff then in office declined to permit the county auditor to inspect the tax books, then in his custody, or to have possession of them for the purpose of an audit. The court was resorted to, to compel him to comply with the law in this respect, the proceedings finally reaching this court. The tax books were eventually delivered, in accordance with an order of court, to the office of the county clerk, and on the night of the day following a disposition of the case by this court, sustaining the county's rights to require the sheriff to permit its auditor to have access to the books for the purpose of auditing them, the county clerk's office was broken into, and eight of the tax books of the largest taxing districts were stolen, and their whereabouts have not since been discovered. The rest of the tax books remained in the county clerk's office, carelessly and indifferently kept, and on this ground their integrity is assailed in the action.

In the absence of the receipt which the law requires the sheriff to execute and deliver to the county clerk at the time he receives the tax books for the purpose of collecting the taxes from the taxpayers, the next best evidence is the tax books themselves.

"If any errors were made by the county clerk in his preparation of the tax books when fixing the amount to be paid by a taxpayer or in deduct-

ing his exemptions, unless such errors are corrected by the tribunal clothed with authority to make such correction, within the time and in the manner and form provided by law, at the instance of the taxpayer or the sheriff, and the sheriff thereby exonerated, the sheriff is bound to account for and pay the county the amount of the taxes shown by the county clerk's tax-books or his receipt therefor. Such correction may not be made in this action to surcharge. his settlement.''

In the pending case it is shown that no receipt for the tax books was executed and delivered by the sheriff to the county clerk for either of the years for either taxing unit. At the beginning of the effort to bring about a settlement by the sheriff of the county and school taxes here involved, the tax books, as made out by the county court clerk and delivered to the sheriff each year, showing the kind and valuation of the property of each taxpayer, after deducting his exemptions, the rate of taxation, the amount of taxes due each taxing unit, a detachable receipt to a stub showing a duplicate of the equalized property of the taxpayer, and the amount of taxes as well as the exemptions to which he was entitled, were in the custody of Lewis. These tax bills in the aggregate contained the total county and the common school taxes with which he was chargeable.

At the time the auditor of the county attempted to audit the tax books in the possession of the sheriff, the receipts to be delivered to the taxpayers who up to that date had not paid their taxes, and the stubs from which the receipts of those who had paid their taxes had been detached, were in tax books. These stubs, in the absence of the attached receipts, so long as they are legible, are the next best evidence of the taxes collected from each taxpayer by the sheriff for each of the years for county and common school purposes. The stubs in the tax books as they were prepared by the county clerk, so long as they remained in existence, without the presence of receipts of the sheriff to the county clerk and the receipts in the tax books as they were originally prepared by the clerk, are controlling in determining the amount of taxes chargeable to the sheriff for county and common school purpose for each of the four years. As to those

taxing districts, where the tax books or the stubs therein were lost, destroyed, or stolen, the books of the tax commissioner after the county clerk had made the entry required by the statute, showing whatever, if any, flat raise, or reduction, special raise, or reduction of the equalized assessment of the taxpayers, are the next best evidence of the taxable property of each individual taxpayer of the county from which, if necessary, it may be determined the amount of the taxes with which the sheriff was chargeable. Indeed, if need be, a new set of tax books may be prepared for the purpose of determining the amount chargeable to him, as having been collected from each taxpayer on his equalized assessment, less the exonerations and the exemptions, if any, as shown on the taxpayer's bill as it had been prepared by the county clerk.

The sheriff, when collecting the taxes for county or common school purposes, accepts and holds the same as a trust fund for the taxing units, and he must account for same as a trustee. Hill v. Fleming, 128 Ky. 201, 107 S. W. 764, 32 Ky. Law Rep. 1065, 16 Ann. Cas. 840.

The courts, if need be, to determine fairly and justly the total taxes with which he is chargeable, in the circumstances, will cause a reproduction of the tax books, at his expense, so long as it is possible to do so by the fragments of the records of the county tax commissioner, the state tax commissioner, and the county clerk; accepting, however, as evidence, the intelligible stubs remaining in the tax books showing the taxes chargeable, according thereto. In making his audit the auditor of the county utilized for this purpose the stubs in the tax books, which were in existence. As to those taxing districts, where the tax books containing the stubs had been taken from the office of the county court clerk and were not to be found, he claims he in effect reproduced the substance of the tax books as they were prepared by the county clerk from the books of the county tax commissioner of those taxing districts as they were computed, after the entry therein by the county court clerk of the flat raise or reduction, and the special raise or reduction of the equalized assessment of the taxes of each individual taxpayer, as certified to him by the state tax commission. This method of auditing the taxes of those districts, in which the

sheriff's tax books containing the stubs were lost or destroyed, was proper. The county auditor claims by the use of the stubs in the tax books, in existence at the time of his audit, and the result obtainable by the repreparation or reproduction of the summation of the tax books for the taxing districts, in which the tax books were lost, destroyed, or stolen, he arrived at the result disclosed by his report. We find no fault with the method adopted by the county auditor to ascertain the amount chargeable against the sheriff for each of the years for both taxing units, county and school. But, since the case must be reversed, we decline to ransack the record to ascertain and determine whether there are any errors in his finding or the results thereof.

In his settlement with the commissioner of the fiscal court, the sheriff reported certain sums as having been paid by him to the county of the taxes collected for county purposes. We find no allegation in his pleading, nor the pleading of the surety, attempting to surcharge either of his settlements as to any payment to the county for which credit was therein allowed or not allowed him. Without an allegation sufficient to surcharge or surcharging the settlement, they are conclusive on both the county and the sheriff as to any item of payment made by him as shown by the credits embraced in the settlements. Commonwealth, for use, etc., v. Clark, Sheriff, 216 Ky. 516, 287 S. W. 983; Pulaski County v. Watson, 106 Ky. 500, 50 S. W. 861, 21 Ky. Law Rep. 61. Therefore, the sheriff may not resort to a list of checks, or other evidence of payment claimed to have been made by him not shown in its settlement, unless such payment was made after the settlement was completed and approved by the fiscal court. He should be credited each year only with the payments as they appear in his settlements with the fiscal court, unless it is clearly proven the same were made after the approval of the settlement for each year.

In the circumstances of the case, he should be credited only with those credits appearing in his settlements and by those exonerations shown by the orders of the fiscal court. The method of settlement directed in the Bush and the Dunn Cases should be followed when determining the taxes chargeable, in-

cluding franchise taxes and taxes on bank stocks and also allowing exonerations and exemptions of the taxpayers, using the obtainable evidence for the purpose, herein approved.

Section 4151-2, Kentucky Statutes, governs the procedure relating to lands sold for taxes. It expressly provides, if no one will bid for, or purchase, the land, the amount of taxes, interest, penalty, and cost for advertising and the collector's commission, it shall be the duty of the sheriff to purchase same for the state, county, and taxing districts, at the amount of the taxes due, interest, penalty, cost, and commissions thereon, and the sheriff shall have credit only for the amount of the taxes in his settlement with the auditor of public accounts. Coleman v. Mulligan, 234 Ky. 691, 28 S. W. (2d) 980. Of course, if the delinquent taxpayer redeems the land, as authorized and provided by the statute, he does so by paying the taxes, interest, cost, commissions, and penalties, as prescribed by law. The language of the statute is:

> "The sheriff or collector shall have credit for the the amount of such tax due the state in the settlement with the auditor of public accounts."

Other language of the statute requires the delinquent taxpayer, if he redeems the land, within the period fixed by the statute, to pay, not only the taxes, but the "interest, penalty and cost, including the cost for advertising and the sheriff's collector's commission." It is very clear from the language of the statute the sheriff is not entitled to charge and collect of the county, or the county board of education, or other taxing district, where he sells land for taxes and the state bids it in, as provided by section 4151-2, either the cost of advertising or his commissions, whether the taxpayer exercises his right of redemption or not. Commonwealth, etc., v. Smedley, 144 Ky. 694, 139 S. W. 861. The county and the county board of education are entitled to surcharge his settlements for each year as to those items allowed him therein for cost of advertisement of or commission for selling the land to pay the taxes of the delinquent taxpayers, where those items are surcharged by their pleading, and, if any credit has been allowed therefor, none will be allowed in determining herein the amount chargeable.

Section 4147, Kentucky Statutes, required Lewis

on the first of each month in each year to report under oath to the county court the amount of state and county taxes he had collected belonging to each fund and the disposition of the money collected by him; and required him to pay, and the fiscal court to collect, a penalty of 6 per centum of all taxes collected and unpaid by him to the county treasurer on the 20th day of January of each year. No order of the fiscal court demanding payment of him of the taxes collected and in his hands on or before the 20th day of January of each year was necessary or required to entitle the county to the penalty of 6 per centum on all taxes collected and unpaid by him to the county treasurer by the 20th day of January in each year. It was his duty to pay the taxes collected for the county on or before the 20th day of January of each year to avert his liability for the penalty of 6 per centum authorized by section 4147. Breckinridge Co. v. Gannaway et al., 243 Ky. 49, 47 S. W. (2d) 934. In the settlements in this action for each of the years, the sheriff should be charged with this 6 per centum, in accordance with section 4147, if he failed to report and pay the collected county taxes as therein required.

Section 4148 declares the state and county taxes shall be due and payable by the taxpayers on and after the 1st day of March after the assessment, and all taxpayers whose taxes are not paid on the 31st day of December after the same are due shall be delinquents, and such taxes shall bear interest at the rate of 6 per centum per annum from the 31st day of December after they are due until paid, and any person or persons failing to pay their taxes by the 31st day of December in the year following the assessment of such tax shall also pay a penalty of 6 per centum additional on the taxes due and unpaid. It makes it the duty of the sheriff to "collect the interest and penalty" and account for same in the same way in which he accounts for the taxes. If the sheriff collects the taxes, penalty, and interest of the taxpayer under this section, they are treated as debt due by the sheriff of the county on January 1st (now January 20th) after they become due. The taxes and penalties due the county, collectible by the sheriff, if not collected, are treated as a debt due from him to the county on January 1st (now January 20th ——) after they become due. The sheriff is lia-

ble therefor to the county and also interest at 6 per centum from that date until paid. The interest is entirely different from, and is in addition to, the penalty of 6 per centum upon the gross sum due and unpaid on January 1st (now January 20th). Fidelity & Deposit Co. v. Logan County, 119 Ky. 428, 84 S. W. 341, 27 Ky Law Rep. 66.

In the settlements herein Lewis should be charged with the penalty and interest accordingly. Section 4241 provides a method for the listing of omitted property, and prescribes the duty of the county clerk in relation thereto. It also makes it the duty of the sheriff "to cause to be listed for taxation" all property omitted by the assessor, board of supervisors, etc., for any year or years.

The county clerk, in the present case, left in the tax books a large number of tax bills signed by him. These were later filled in by the sheriff and the name of the taxpayer, whose name was omitted from the assessor's list, inserted therein, and the taxes collected by Lewis. He should be charged with any taxes so collected as well as those collected on the omitted lists shown by the county clerk's record. Alexander v. Owen County, 136 Ky. 420, 124 S. W. 386; Mason v. Cook, 187 Ky. 260, 218 S. W. 740; Commonwealth, etc., v. Finch, 8 Ky. Law Rep. 961.

The orders of the fiscal court making the levies for county and school taxes for each year are challenged by Lewis and his surety; except they concede the validity of the county levies for 1926 and 1928. Section 180 of our Constitution requires every fiscal court order levying a tax to specify distinctly the purpose for which it was levied. It has been held repeatedly by this court that, where the order of levy fails to comply with this constitutional requirement, it is void, and the sheriff and the surety are not liable therefor, in an action brought to recover the amounts collected by the sheriff under a void levy. Whaley v. Commonwealth, 110 Ky. 154, 61 S. W. 35, 23 Ky. Law Rep. 1292; Commonwealth v. U. S. Fid. & Guaranty Co., 121 Ky. 409, 89 S. W. 251, 28 Ky. Law Rep. 362; City of Somerset v. Somerset Banking Co., 109 Ky. 549, 60 S. W. 5, 22 Ky. Law Rep. 1129; Hillman Land & Iron Co. v. Commonwealth, 148 Ky. 331, 146 S. W. 776, L. R. A. 1915C, 929.

The sheriff and his surety insist the levy for 1927, as revealed by the fiscal court orders, if valid at all, is a 50-cent, and not a 70-cent levy. The order of levy of the county tax for 1929 is criticised with the insistence that it does not specify distinctly, or at all, the purpose for which it was levied; also the claim is made the levy providing for the poll tax for 1929 of $1.50 for each male person over 21 years of age does not specify the purpose for which it was levied. As a part of the deposition of witness Dooley, a quotation purporting to be an order of the fiscal court, setting out the levy for county purposes for the year 1927, reads thus:

"Upon motion, duly seconded, that a levy of 50c on each $100.00 of the taxable property of Knox County, as set out at the December 11th, 1926, term of this court be as follows:
Road and Bridge fund          5c on each $100.00
Deficit Fund                 12½c on each $100.00
and 32½c on each $100.00 of the taxable property of Knox County."

In the deposition of Bargo, ex-county clerk, it is shown that on the record of the court for the year 1927 was "pasted an instrument in regard to the proposed tax levy for the year 1927, showing it to be 50c for the county purposes and 20c road and bridge bonds," making a rate of 70 cents for county purposes for that year.

From the record, or a copy thereof, about which these witnesses testify, we are unable to determine the validity of only a part of the assessment for 1927 or the rate levied for the year 1927 for county purposes. We cannot determine either from the excerpts of the record, as they are presented, or the opinions of the accountants, the sufficiency of the orders of the fiscal court, making the entire levy for county purposes for the year 1927. The instrument "pasted" in the order book of the fiscal court in regard to the proposed levy for the year 1927 is not a part of the record, and without it and an explanation of its presence in the book we cannot determine whether it validates the levy for the year 1927. It is shown that the fiscal court attempted to act in reference to the levy of 1927 under the Budget Act of 1926 (chapter 171), and that the levy

was made and approved by the fiscal court in accordance therewith. Whatever was approved by the fiscal court at the time of the entry of the order. it is not a part of the record.

The validity and rate of levy for the year 1927 for county purposes not being determinable from the record as presented, it may be completed, if it is susceptible of completion, on a return of the case to the circuit court.

Respecting the levy for 1929, on the 5th day of April, 1929, an order was entered in this language:

"It is ordered by the court that the county levy be set at 50c per $100.00 on all property subject to county levy; a poll tax of $1.50 on each male person over the age of 21; and a levy of 20c on the $100.00 of taxable property for the purpose of creating a sinking fund. Section 157A of the $200,000.00 bond issue."

Another order was entered in reference to the levy of 1929 reciting:

"It is ordered that 50c be divided as follows: general fund 30c on the $100.00 on taxable property; road and bridge fund 10c; deficit fund 8c; special fund for bridge across the Cumberland River 2c; bond indebtedness 20c; county poll $1.50; common school 75c and $1.00 poll."

These orders show the validity and the rate of levy of taxes for county purposes for the year 1929.

The levy of the taxes for each of the years for school purposes is assailed on the ground there is no order of the fiscal court making the levy for either year. The county board of education, each year, prepared an itemized, verified, detailed budget of its needs in practically the same form, and presented the same to the fiscal court, and it entered same on its order book, followed by an entry reciting that it was read and approved by the court. The budgets presented by the county board of education to the fiscal court contain this language:

"It was ordered that the school levy for the year 1927 be, and the same is hereby, fixed at One ($1.00) Dollar poll and sixty-five ($.65) cents on each One Hundred ($100.00) Dollars of taxable

property in Knox County that is subject to taxation for school purposes.''

The budget for each year varied according to the rate requested to be levied by the fiscal court. The form adopted by the fiscal court of entering on the order book of the levy of the school taxes for each year is not material. Its intention to make the levy for each year and the purpose for which it was made are plainly indicated by the entries on the order book. The fact the levies were made for school purposes in the language of the budgets of the county board of education, with order approving same, is inconsequential. This fact did not render either of them invalid. The levies of the school taxes are challenged on the further ground the state board of education failed to approve the budgets as fixed by the county board of education, as required by the Statutes. This question was determined by this court adversely to the contention of Lewis and his surety in Newell v. C., N. O. & T. P. Ry. Co., 246 Ky. 628, 55 S. W. (2d) 662, and Commonwealth v. Walker, 246 Ky. 679, 55 S. W. (2d) 914. Under section 4148 the sheriff is liable and the county board of education is entitled to require him to account for interest and penalty as therein authorized for taxes collected by him, if paid after the 31st day of December, whether he collects the same or not. Fidelity & Deposit Co. v. Commonwealth, 249 Ky. 170, 60 S. W. (2d) 345. While there is no statute fixing a penalty for his failure to turn over the taxes collected by him for county school purposes, before or after the 31st day of December, of the year in which the same were due (Clarke v. Commonwealth, 233 Ky. 728, 26 S. W. (2d) 1041; Fidelity & Dep. Co. v. Commonwealth, supra), he is liable as trustee for 6 per centum interest as of the statutory due date (section 4399-a-8; Commonwealth, etc., v. Walker, 246 Ky. 679, 55 S. W. (2d) 914).

The sheriff and his surety rely on the five-year statute of limitation (Ky. St. sec. 2515) as a bar to the claim for taxes collected by Lewis on the turn over of the books to him by the outgoing sheriff on the 1st day of January, 1926. This action was filed on the 28th day of April, 1931. The surety charges in its answer that a settlement was made by Lewis as sheriff in October of 1925. We find no settlement supporting this

allegation. The right of action of the county to surcharge the sheriff's settlement for the year 1925 accrued on the entry of the order of the fiscal court approving it. We find no evidence sustaining the plea of limitation.

They also assert the sheriff is entitled to have his commissions charged on the county taxes and the school taxes as one fund, and to collect a commission of 4 per centum thereon; 1 per centum only to be charged to the school fund and the other to be charged to the general fund of the county. We have considered the statutory commission of the sheriff for collecting school taxes in numerous cases, and in all of them we have construed section 4399a-8 as authorizing the collection of a 1 per centum commission for the collection of school taxes. See Livingston County v. Dunn, and cases cited.

The further argument is made by the sheriff and his surety that the joining of the county and its treasurer with the county board of education as plaintiffs constituted a misjoinder, entitling them to require an election as to which one of them shall prosecute the action to surcharge or compel settlements by the sheriff. As we have already observed, the taxes collected by the sheriff are a trust fund in his hands, until accounted for, and he must account for the same as such. Considering the taxes when collected by him as a trust fund, it follows that every beneficiary of the trust is a proper party to enforce an accounting and a distribution of the trust fund by the trustee—in this case the sheriff.

The sheriff having made no settlement of the school funds for either year, the court will determine the taxes due the school fund for each year of his term in the manner hereinbefore set out in reference to the taxes chargeable against him for the county purposes, allowing him credits by the exonerations as shown by the orders of the fiscal court and such credits as were paid by him during each year as may be clearly and convincingly shown by the evidence. But either party may amend his pleading with the consent of the trial court.

The judgment is reversed for proceedings consistent herewith.